on behalf of Mr. Hernandez. My hope is to reserve three minutes for rebuttal. I want to start with the government's waiver argument. They complained that defense counsel in the district court did not address the text alerts in the motion to suppress. And the reason that defense counsel didn't do that is because when defense counsel filed the motion to suppress, he was not aware of the text alerts. And the court may recall at trial, Border Patrol Agent Hagen explained why that was. He said he didn't put that information in his reports because he considered law enforcement sensitive. And also that he saw it as his duty to establish independent reasonable suspicion based on what he observed. So when defense counsel filed the motion, he was unaware of the text alerts. He was unaware of the LPR alert? He was unaware of any of it. He was going off the facts alleged in the reports and in the complaint, which solely indicated that the agents relied on the slowing down and the failure to make eye contact. So basically he didn't know about them because they weren't disclosed to him? Correct. But the district judge made his decision in substantial part on the text alerts. So I guess it's not something that escaped the district judges. Sure. And it was eventually revealed because government counsel then, when they filed their opposition, they included a declaration from Agent Hagen indicating all this stuff about the alerts. So that was the first time it came up. District court judge then came out at the hearing and said, look, even based on the alerts, with alerts included, I was inclined to suppress here. But I've looked at the Ninth Circuit case law in this area, specifically Cotterman, Perez, and Durazo, and have concluded that the alerts are entitled to wait and that the alerts are critical in establishing. Let me ask you something about that. I know the district judge thought they were critical. Frankly, when I read this, it looked a little different to me. And I want you to tell me why I'm wrong. I'm assuming that I am since I didn't see it the same as the district judge. It looked to me like there's plenty of stuff that's suspicious here. To me, the thing that jumped out at me is a car, a BMW going 10 miles an hour below the speed limit. I've had four of them and I rented one in Germany and they are cop magnets and it's hard to hold them down to the speed limit. They go. And that jumped out at me. And then the business about the weaving, not such a big deal, but taking five hours to drive 100 miles in a BMW? No. And then I saw the text alerts and I thought, why is it such a big deal? It's obviously written really broadly so that any terrorist will pop up plus 10 people that aren't terrorists. But so what? You've got this little bit of text alert stuff plus the really weird driving, driving. He could set the cruise control for nine miles an hour over the speed limit instead of going 10 miles an hour or less. I just thought it was really suspicious even if there were no text alerts. Well, interestingly, I think what Your Honor is pointing out there actually plays into the district court's reasoning, which is what the agent said is that the BMW was cruising along at some unknown speed. And then when it got to them and they started coming after it, it slowed down. So I agree. A nice German performance car is a cop magnet. And having passed some cops, you would want to slow down, especially if you've been going fast so as not to be pulled over. And as the speed slowed down, you want to appear like you're looking forward, ho-hum, there's nothing going on here. I'm following the law. I'm not speeding. Is this the one with the sun visors pulled down so that you can't see your mirror but the cop can't see you? No, that was... Another case, I guess. That's a case, that's when Rosefro, which I was counsel on too, so I happen to know what you're talking about. But no, this is not that case. The car slows down after the agent pulls in behind and then doesn't, the occupants don't make eye contact with the agent. If I'm right about all the other stuff being enough for suspicion and the text alerts are just kind of a little icing on the cake, doesn't that mean we don't even have to get into all this text stuff in order for us to affirm? Well, the district court said based on his experience driving out there that this slowing down and not making eye contact is nothing out of the ordinary, nothing unusual. So I think it would boil down to the fact that there is, he's picked up three passengers and it's taken him five hours since he crossed the border. But that would apply to anyone who comes across the border, picks up some family members and then heads north on an interstate. It doesn't meaningfully limit the number of people that can be pulled over. You just need reasonable suspicion here. You don't need probable cause. I understand that. But you know, the logic of thing, I mean, you say it could apply to anyone who drove across the border alone, picked up family members on the American side and then kept driving slowly, taking five hours for a hundred miles. How many people do that? That sounds like an unusual occurrence. Well, I would suggest it doesn't indicate taking five hours for a hundred miles. It would be interesting. And the problem is I think it would, it just creates... Well, but that's not the only inference you have to make from that. I think that's the, yeah, that could be that. Yes. But it could be the other two. Sure. And I think this is where I draw the court's attention to the logic in Diaz-Juarez, which is that it creates such a broad brush. If anytime someone who comes across the border and then is found to have more people in their car and is stopped isn't that big a deal. Assuming there's nothing there, it's just a brief, polite hello and goodbye. Well, it's a bigger deal. That's why you only need reasonable suspicion. What's a bigger deal when it turns out that they're illegals in the car? That's a bigger deal for some people than for others. People who feel like they're stopped frequently, which fortunately for me, I'm not one of them. I don't get stopped. Would be if you drove a BMW. I drive a Porsche. And you don't get stopped? No, because I drive the speed limit or nine miles over. But I would suggest that if the court is inclined to address it to say, look, these text alerts don't provide. Judge Rastani has a question. Do you? I'm sorry. Yeah, I wanted to clarify something about the geography. We're talking about this five hours to go 100 miles. I understand that the crossing was at Tecate. And so what happened? They went west through the mountains and then got to Highway 15. Do you know that from the record what the route was at all? I'm not suggesting that he would have been driving 20 miles an hour, essentially an average as the crow flies to get to that point. What I'm suggesting is that this indicates, could well indicate and normally will indicate someone who stops for lunch when they cross the border. You've been in line for six hours at the border, stops to pick up family members, stops to rest. There are all sorts of explanations. And the problem is if this is enough for a stop, it will apply to thousands and thousands of people. It doesn't meaningfully limit the discretion for the stop. And coming back to whether or not these other facts aside from the text alerts might be enough, I would suggest that given that the district court relied on its own experiences there, which we already have a binding authority that says they are entitled to some weight, don't we? No, I don't think I think Thomas is the most on point. And Thomas dealt with the tip in which it was devoid of specifics. It was conclusory. And this is these text alerts are the same thing, except Thomas actually have some indication where the tip is coming from. Here you just have something in text. There's no indication if it's based on a constitutional consideration. There's no indication if it's based on a tip that's unreliable. You can't even assess it. The court dealt with a situation in which the text alert indicated that the person had a prior child molestation conviction and that the agents then when they followed up on that before doing the search understood that that conviction related to child pornography. The text alert also indicated that the person frequently traveled to sex stores and places. The agents knew that the person was coming back from Mexico, which they identified as a frequent sex tourism destination. So Cotterman has some objective solid facts, not just like the text alerts in this case that the person is suspected of alien smuggling. Did Cotterman stand for the proposition that text alerts were part of the total calculus? No. And Cotterman didn't address the specific point in this case, which is that the text alert did not have individualized objective facts rather than just conclusions. But even if it had addressed that, it could easily have said, well, look, these are the fact that the person has a conviction for child molestation relating to child pornography is a thing that happened, rather than a statement of suspicion based on that they're being investigated. Well, the totality of the circumstances still applies here. And it would seem that the court must in all situations view the facts filtered through the lens of the agent's experience in detecting illegal entry and smuggling, right? Of course. That's Erevisu, I believe. Yes. Can't argue with the Supreme Court. But the point is here, I think Thomas controls and Fernandez Castillo, which the government relies on, came after Thomas and affirms Thomas and says, look, if whatever is being provided is just a conclusory statement devoid of specifics, such as this person is suspected of alien smuggling, that's not an objective fact. The judge isn't looking at an objective fact and saying, do these objective facts add up to reasonable suspicion? You said the Ninth Circuit doesn't have any authority about text alerts. I would agree that there's no published authority that addresses squarely whether the text alerts alone are sufficiently reliable. But it seems to me that United States v. Durazo and United States v. Perez, the cases have consistently relied upon text alerts in analogous circumstances in unpublished cases and seem to give it some weight. Well, that's correct. And I addressed Perez and Durazo in my opening brief. In both those cases, though, the person actually had been arrested previously for alien smuggling or human smuggling. Unless my colleagues have other questions, you're over your time. But I'll give you a minute for rebuttal or depending on what we have additional. Judge Rastani, did you want to ask any additional questions right now? No. Okay. Judge Kleinfeld? Okay. All right. We'll hear from the government and then I'll allow you minimal rebuttal time. Good morning. Good morning, Your Honors. May it please the Court, Bram Alden for the United States. I want to start with the defendant's first proposition, which is the waiver argument. And in fact, the text alerts were mentioned in the complaint affidavit, which is on the district court's docket. It's the first entry on the district court's docket. And at page five of that entry, the text alerts are, in fact, mentioned. So the defendant was on notice of the fact that the text alerts were part of the reasonable suspicion calculus. Where do we look for this again? It's the first docket entry, CR1, I would call it. But it's the first entry on the district court's docket at page five is the complaint affidavit, which the affidavit from Agent Hagen, who is the primary agent here, and he, too, discussed the text alerts. The defendant didn't file a reply brief and at the hearing on the motion only contested possibly the LPR, the license plate reader alert, which was separate from the text alert, and at that point didn't mention anything whatsoever challenging the text alerts. Don't we have some published authority on waiver that says if the district judge discussed it fully, then there must not have been a waiver? It must have been sufficiently brought to his attention? And yes, you do, Your Honor. But I think in this case, the text alerts foundation and reliability was not something that the district court discussed. Well, you don't waive something just because you don't make every argument that could be made. But what happened here was the defendant never challenged anything about the text alerts, which deprived the government. Let me ask you about these text alerts. You heard my question to your opposing counsel. Yes. I basically want you to comment on the same thing. They look like they're not much. They're something. They're not enough by themselves because they are to be considered in the totality of circumstances. What am I missing there? I would agree with that analysis completely, Your Honor. It looks like you're trying to sell them as more than that. Are you trying to say a text alert is enough to justify a stop? No, Your Honor. And if there were more information in the text alerts themselves that provided the necessary foundation that the government didn't supply because this issue wasn't raised before, then perhaps they might be sufficient on their own. You're confusing me because you're trying to argue waiver again. And let's pretend for the moment that waiver is not even of concern. Let's just talk about text alerts, that a text alert is enough. Not in this case, Your Honor. If there were a text alert that itself included more facts in the alert, it might be sufficient. They don't have to be based on anything proved, do they? It can just be an anonymous tip claiming that somebody is some sort of criminal. I believe that's correct. And so the distinction in Cotterman would be that there was slightly more information in the text alerts. I do, however, think Cotterman does stand for the proposition that Judge Rustani articulated, which is that text alerts do play some role in the reasonable suspicion calculus, regardless of how bare bones they are. But you're not prepared to say that there may be a text alert out there that would be enough, but here you're not taking that position. Exactly, Your Honor. So what about if, let's say if we don't even consider the text alert here, is there enough? I will take the position that there would be enough to constitute reasonable suspicion based on the erratic driving, which even if the district court didn't give it weight, this court in conducting its de novo review should give it weight, just as that was given weight in Arvizu and Valdez Vega. The fact that the car did slow down and that other cars were still passing around it. Everybody slows down when they see a government car until they figure out that the government agent is not after them. Did this one just slow down or did it stay slow? I thought it stayed slow. It stayed slow as the agents followed behind it. It then was weaving within its own lane and veering within the lane. One of the aliens actually confirmed and corroborated that at trial, testifying that the defendant drove into the shoulder. In addition to the erratic driving, there was the fact that the four occupants of the car, not one of them looked in the direction of the Border Patrol agent's car. There was also the fact that the car had crossed from Mexico earlier that day and that, as Your Honor pointed out, that it took five hours to drive what was either a 70 or 100-mile drive. I know, Judge Rustani, you were asking about where the car came from. We don't know the exact route. What we do know is that it was stopped 70 miles from the border or 100 miles from the Tecate Port of Entry. That's what I thought. And it is very still close to the border, and yet a drive that, in the agent's experience, would have taken an hour and a half. In addition to… You know, Carterman was at the border, right? Carterman was at the border? Yes, Your Honor. Okay. Carterman was… Correct. Okay. I'm just wondering if that makes Cotterman of limited use. I cite Cotterman solely for proposition that the text alerts themselves are entitled to some weight in the reasonable suspicion calculus, as they were there. I think the other facts that might distinguish Cotterman are facts that are analogous to Arvizu and Valdez Vega, which are the location of this vehicle on the I-15. Obviously, Cotterman was a child pornography case. This, in its facts, is a smuggling case like Arvizu or Valdez Vega, in which the known drug corridor, the fact that it's still close to the border… What about Thomas? What's your point on Thomas that the appellant says he considers to be his best case, maybe? Three points I would make on Thomas. First, it's a pre-Arvizu case. That is what this court pointed out in Fernandez-Castillo, where it said Thomas is a pre-Arvizu case. So that's a case before the Supreme Court has said you cannot entirely discount something from the reasonable suspicion calculus. The second point I would make on Thomas is that this court went to great pains to emphasize the nature of the alerts in that case were, quote, equivocal and attenuated, vague and ambiguous. And here, by contrast, while the alert may be bare bones, it says specifically, as to defendant, that he was the subject of a current investigation for human smuggling or trafficking and that his car was a possible smuggling conveyance. So I think the alert here was itself not so vague and generalized, as in Thomas. Where does the information come from that he was alone crossing the border and then he had more people later? That's also in the text alert. So the text alert comes from the ATS system, the Automated Targeting System, which means that when the agents are in their car following this defendant, they see whether he crossed alone or with other people that day. How do I read this? I'm looking at the text alert, and I see at the top it says possible smuggling conveyance. And I don't see where it says that the driver was the only person in the car, but it could be because I don't know how to read this. So I think that's actually on the next page, probably, from where you're looking, or maybe the prior page. Could you go over to page 39? Yeah, I actually would turn to page 36 of that same excerpts of record, and that, or page 35, where it lists on page 35, there's an entry for the crossing on July 26th at the top of that table, and it shows that he was admitted. I believe number is 1 and quantity 1, meaning he was admitted by himself when he crossed the border that day. And that is also in the agent's affidavit, which is I can look at this system, and based on my training and experience, know that this means he crossed alone. And I'm looking at the car in front of me, and I see four people in it. I know that he picked up three passengers. So I would also ask a question. Yes, please. I didn't mean to interrupt. I'm here for you. Please finish your answer, and then I had a question. Have you finished your answer? Absolutely. Okay. I was a little confused. There was a lot of discrepancies in these reports, and sometimes information's in and sometimes information's out. But the district judge credited the agent. But there was talk about these things being sensitive, and that's why they're not in there. But you're talking about this ATS thing. What is the sensitive thing that I'm supposed to avoid? And if it's something you can't say in this hearing, then I guess I'll have to get a piece of paper from you. Is there anything that we're supposed to avoid talking about in public? For purposes of this appeal or this argument that is sensitive, what I believe is sensitive is some of the law enforcement techniques by which they obtain information that goes into some of these alerts. I think that is part of the reason that the alerts should be. What sources and methods like or something? Yes, Your Honor. And I think that's part of the reason. And that's not in this record, so I don't have to be concerned about it? Correct. Okay. And the only other point I would add to the reasonable suspicion calculus is that, and we didn't emphasize this in our brief, but you can find this at the excerpts of record where you were looking, Your Honor, at pages 35 to 36. This car had crossed at least 10 times in the prior month preceding this stop. And in the prior month and a half before this stop, it was referred to secondary inspection four times. So those facts were also known to the agents at the time and would have also added to the reasonable suspicion. Why are they suspicious? So many people live on the Mexican side and work on the American side. I don't understand. Certainly it's susceptible to innocent explanation, but that is the kind of factor that Valdez Vega and RVSU recognize as potentially adding to the reasonable suspicion calculus that a car is crossing frequently. I know the agents think that's suspicious, but I don't understand why, so I need you to educate me. Just because it would tend to reinforce the proposition that this might be someone. How? There's a little town in Alaska called Hyder, and it borders on a little Canadian town, but not quite as little, called Stewart. And basically everybody in Hyder crosses the border a couple of times a day. Why is it suspicious when in Mexico and the U.S., where you can make so much more money in the U.S., but you can live for so much less money in Mexico, why is that an ingredient at all? Because, Your Honor, there are so many people in California who do not cross the border every day, such that if someone was engaged in illegal alien smuggling, it is more likely that they are one of the people who cross more regularly. Are you contending in and of itself that would be enough? No. Are you throwing that into the totality of the circumstances mix? The latter, Your Honor. Okay. And I see my time is up. My colleagues do not appear to have any additional questions, so I will give counsel for the appellant a minute rebuttal. I'd like to draw the court's attention to government counsel's recognition that these text alerts alone would not be enough. He says if there were more facts that they might be to establish reasonable suspicion. They don't have any facts. What they have is a statement, really, that this person is being investigated. If an agent got up and said, I pulled him over because I was investigating him, judges say, fine, tell me the facts that give you reasonable suspicion, not your conclusion that you were investigating him or you suspected him. What are the facts? Well, what I understood him to say is that he's not contending in this case that the text alert alone would have been sufficient. No, but my point is consistent with Thomas' is that the text alerts deserve no weight because they're conclusive. Well, wait, what if he had a text alert that didn't just say he's being investigated, which doesn't prove anything? But what if he had a text alert that says he's been convicted of alien smuggling? Well, I think that that is more, and that's the difference between this case and Cotterman and Perez and DeVrazzo, because that's a concrete thing that's happened. You've actually gone to court and either pled guilty or been convicted beyond a reasonable doubt by a jury. My point of it is your opposing counsel concedes the text alert is not enough in this case, but he wants to leave the door open to saying the text alert is enough in some hypothetical case. I think more importantly and more to the point is he wants to argue that the text alerts deserve some weight, and the district court, of course, gave him definitive weight. And our point is under Thomas they deserve no weight because all they say is that the person is being investigated, which is really just saying I suspect them and not giving any reasons. Okay, unless my colleagues have additional questions, we've used the time. Thank you both for your argument. This matter will stand submitted.
judges: Kleinfeld, Callahan, Restani